**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                  Case No. 26-CR-01848-MIS

OSCAR RAMIREZ-CHAVEZ,

    Defendant.

## ORDER DENYING MOTION IN LIMINE TO EXCLUDE IMPEACHMENT INFORMATION

**THIS MATTER** is before the Court on the Government's Motion in Limine to Exclude Improper Impeachment Information ("Motion"), ECF No. 46, filed June 17, 2026. Defendant Oscar Ramirez-Chavez did not file a response. On June 18, 2026, the Court held a Pretrial Conference in which, inter alia, the parties argued the instant Motion. Tr. of Hr'g of Jun. 18, 2026 at 28:10 – 45:23.

Upon review of the Government's Motion, the record, and the relevant law, the Court will **DENY** the Government's Motion.

### I. Background

On April 2, 2026, United States Border Patrol agents arrested Defendant Oscar Ramirez-Chavez, a Guatemalan national, in Doña Ana County New Mexico. Compl., ECF No. 1, filed April 6, 2026. On April 22, 2026, Defendant was charged in an indictment with Reentry of a Removed Alien pursuant to 8 U.S.C. § 1326(a) and (b) for allegedly knowingly entering the country despite previously being deported/removed from the United States on February 5, 2025. Indictment, ECF No. 10. A jury trial was scheduled for Defendant for June 22, 2026. See Notice of Hearing, ECF No. 17, filed May 14, 2026.

On June 17, 2026, as the parties prepared for trial, the United States filed a Sealed Motion in Limine to Exclude Improper Impeachment Information, ECF No. 46. The Court then heard oral argument on the Motion the following day during a Pretrial Conference on June 18, 2026.

**II. Analysis**

In its Motion, the Government asks the Court to exercise its discretion under Federal Rules of Evidence Rule 403 to exclude evidence of Border Patrol Agent Andres Alarcon's online membership and activity in the CBP Facebook groups '10-15,' '10-15 X2,' and 'The Real CBP Nation' at trial and bar Defendant using the information for impeachment purposes. Mot. at 1.

Under Rule 608(b) of the Federal Rules of Evidence, the Court may allow a party on cross-examination to raise specific instances of conduct to attack a witness's credibility if such inquiries are probative of the witness's character for truthfulness or untruthfulness. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . ." Fed. R. Evid. 403. However, the Tenth Circuit has also cautioned that "the application of Rule 403 must be cautious and sparing." United States v. Naranjo, 710 F.2d 1465, 1469 (10th Cir. 1983) (citation omitted).

The Government argues that although Rule 608(b)[1] of the Federal Rules of Evidence allows for specific instances of misconduct to be admissible to impeach a witness, "'that rule does not require or even imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.'" Id. at 2 (quoting United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993)). Further, the Government argues that even if the Court were inclined to view the evidence as admissible under Rule 608, the Court

---

[1]    The Court notes that Rule 608(b) concerns witness character for truthfulness, which seems inapplicable in this situation.

should exercise its discretion under Rule 403 and exclude the evidence as the "dated online activity is not probative of the agent's veracity because there was no finding or conclusion that he personally has done anything inappropriate other than being a member" of the groups.[2] Id. Additionally, the Government argues that even if Agent Alarcon's membership in these online groups was deemed to have probative value as to his veracity, any probative value would be substantially outweighed by the negative consequences because it would open the door for a cross examination that may create a "mini-trial that would unfairly prejudice the jury against the agent and waste time on issues not relevant to Defendant's innocence." Id.

The Defendant counters that the CBP Groups "10-15," "10-15 X2," and "The Real CBP Nation" previously garnered national media attention from outlets such as ProPublica and ABC News[3] because their members used the forums to make horrific statements about immigrants including sharing jokes about migrant deaths. States. Tr. of Hr'g of Jun. 18, 2026, at 40:3-12. As such, Agent Alarcon's membership in those groups directly relates to issues of credibility and agent bias and questions about that affiliation should be admissible at trial. Id. at 44:23 – 45:6.

Here, the Court finds that Defendant inquiring into Agent Alarcon's affiliation with these Facebook Groups on cross examination is relevant and admissible because involvement with these groups could certainly lead a juror to have questions about a CBP officer's bias and the credibility of their testimony. Facebook Groups like "10-15," "10-15 X2," and "The Real CBP Nation" made

---

[2]    The Court notes there is a lack of evidence concerning Agent Alarcon's involvement in the groups, in part because the Government failed to follow up with Agent Alarcon concerning his involvement. At this late hour, the Court finds the best way to determine Agent Alarcon's level of involvement is through sworn trial testimony and cross examination.

[3]    See A.C. Thompson, Inside the Secret Facebook Group Where Agents Joke About Migrant Deaths and Post Sexist Memes, ProPublica (July 1, 2019, 10:55 a.m.), https://www.propublica.org/article/secret-border-patrol-facebook-group-agents-joke-about-migrant-deaths-post-sexist-memes; See also, Sophie Tatum, Border Patrol chief addresses 'offensive' posts in online group, ABC News (July 24, 2019, 6:04 pm), https://abcnews.com/amp/Politics/border-patrol-chief-addresses-offensive-posts-online-group/story?id=64545990.

national news at the time because the posts shared within them were conscience-shocking and sparked such backlash that they prompted internal and congressional investigations into their content. See After a Year of Investigation, the Border Patrol Has Little to Say About Agents' Misogynistic and Racist Facebook Group, ProPublica (Aug. 5, 2020), https://www.propublica.org/article/after-a-year-of-investigation-the-border-patrol-has-little-to-say-about-agents-misogynistic-and-racist-facebook-group. These groups were not merely forums for CBP employees to banter or let out steam, rather they were places where jokes about sexual assault and the death of migrants were celebrated, and the use of racist and misogynist memes and slurs were regularly bolstered. For example, one of the posts revealed in ProPublica's reporting featured a photo of a dead father and his 23-month-old daughter lying face down in the Rio Grande with a caption that read in part, "have y'all ever seen floaters this clean." See supra Thompson.



Photo retrieved from Id.

Further, numerous courts have already recognized that involvement with "10-15" and groups like it is potentially strong evidence of bias against immigrants and relevant for the purposes of witness credibility. See United States v. Tovar-Duran, No. 19-MJ-24405-BLM-GPC, 2024 WL 1444994 at*3 (S.D. Cal. Apr. 3, 2024) (holding that prosecutorial lack of disclosure of

evidence that a Border Patrol witness participated in "I'm 10-15" could be used to impeach witness credibility and is a Brady material); See also e.g., United States v. Morales-Roblero, No. 3:19-MJ-24442, 2020 WL 5517594, *6 (S.D. Cal. Sept. 14, 2020); United States v. Jeronimo-Pablo, No. 3:20-MJ-20066, 2020 WL 4500628, *8 (S.D. Cal. Aug. 5, 2020).

The Court also disagrees with the Government's assertion that the probative value of Agent Alarcon's affiliation with these groups is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Agent Alarcon was the chief author of a significant document/record in the instant case, the I-213, and assisted with the creation of the fingerprint card tied to Defendant's initial processing following his apprehension by CBP. Tr. of Hr'g of Jun. 18, 2026, at 32:20 – 33:11. And Agent Alarcon, by the Government's own admission, was also the point of contact for documenting much of Defendant's biographical information and memorializing the narrative summary of apprehension by CBP officers on April 6, 2026. Id. at 37:5–19. Thus, he is a valuable witness in this case and the credibility and veracity of his testimony may be pivotal to how a jury resolves this matter. Moreover, the Government was unable to tell the Court the extent of their witness's activity with these groups, nor whether he was still a member of any such group. Id. at 28:20 – 29:18. Thus, the Government's argument that even if relevant, such information/affiliation is dated, is speculative.

As such the Court finds that the probative value of evidence of Agent Alarcon's affiliation with these social media groups is not substantially outweighed by a danger of unfair prejudice, confusion of issues, or misleading the jury. Therefore, Defendant may raise the matter on cross-examination.

### III. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that the United States's Motion

in Limine to Exclude Improper Impeachment Information, ECF No. 46, is **DENIED.**

_____

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

6